# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 1099 | **DATE** | 8/25/2004 |
| **CASE TITLE** | United States of America v. Henry C. Renken | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Reconsideration

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's Motion for Reconsideration (Doc. # 77) is granted. Like his first confession, defendant's second confession (including his oral and written statements) shall be suppressed and may not be admitted in evidence. This case is set for a status hearing at 9:00 a.m. on September 3, 2004.

(11) [For further detail see order attached to the original minute order.]



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) ) ) No. 02 CR 1099 |
| v. | ) ) HONORABLE DAVID H. COAR |
| Henry C. Renken, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Henry C. Renken was charged in a two-count indictment with bank robbery and use of a dangerous weapon in connection with the commission of said offense, in violation of 18 U.S.C. §§ 924(c)(1)(A), 2113(a) & (d). Defendant's motion for reconsideration of this court's March 22, 2004 Order concerning the admissibility of his two confessions is currently before the court.

For the reasons set forth below, defendant's motion is granted. Like his first confession, defendant's second confession shall be suppressed and will not be admissible in evidence.

I. **Procedural Background**[1]

Defendant made two confessions to government agents in the late evening hours of November 13, 2003 and early morning hours of November 14, 2003. The first confession was not preceded by the administration of defendant's *Miranda* rights; the second was. *See Miranda v. Arizona*, 384 U.S. 436 (1966). In other words, it was only mid-stream during the interrogation

---

[1] The relevant facts concerning the bank robbery and the government's initial investigation thereof are fully set forth in this court's March 22, 2004, memorandum opinion and order and are repeated here only to the extent necessary for coherence. This court assumes familiarity with the March 22, 2004 memorandum opinion and order.

and after defendant had made his first confession that he was advised of his *Miranda* rights. Thereafter, he made a second confession.

Both confessions were made while defendant was seated at his kitchen table and surrounded by numerous government agents. The first followed a period of questioning that lasted for fewer than twelve minutes. After defendant confessed to committing the bank robbery and provided some details thereof to the interrogating agents, including the location of the gun that he had used in the course of the robbery and the money that he had obtained from it, the agents virtually immediately ceased their questioning. At that time, one agent retrieved an "Advice of Rights" form from his car, the form was read to defendant, and he signed the form. The questioning then resumed, and defendant made his second confession, which was somewhat more detailed (according to testimony presented by the government). Defendant made both confessions to the same government personnel.

On January 30, 2004, this court held a hearing concerning the voluntariness of the two confessions. Subsequently, the court considered the government's motion *in limine* to admit defendant's confessions and, *sua sponte*, reconsidered defendant's July 3, 2003 motion to suppress his confessions. By an Order dated March 22, 2004 ("Order"), the court concluded that defendant's first confession should be suppressed, but that his second confession (including both oral and written statements) should not be suppressed and would be admissible in evidence.[2]

The inadmissibility of the first, unwarned confession was clear under *Miranda v. Arizona*,

---

[2] On July 3, 2003, defendant moved the court to suppress his statements. On July 9, 2003, the court denied defendant's motion on the grounds that it was untimely filed. However, the voluntariness of defendant's statements was subsequently addressed by the parties at the January 30, 2004 hearing and in their February 4, 2004, written submissions to the court.

384 U.S. 436 (1966) and its progeny: defendant did not receive any *Miranda* warnings or waive his rights prior to the custodial interrogation that led to his first confession. *See* Order, pp. 11-16. However, the admissibility of the second, warned confession presented a more complex question, which this court sought to answer consistent with the dictates of the Supreme Court's decision in *Oregon v. Elstad*, 470 U.S. 298 (1985). *See* Order, pp. 16-22.

In *Elstad*, the Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Elstad*, 470 U.S. at 300. The Court further instructed that where the first statement is unwarned, but not coerced (*i.e.*, involuntary), "the admissibility of any subsequent statement should turn . . . solely on whether it is knowingly and voluntarily made." *Id.*, at 309. In the Order, this court expressed its serious concerns about sanctioning the government's conduct by finding the second confession admissible. The court was concerned both that the government deliberately declined to give defendant his *Miranda* warnings until *after* he had given his first confession and that approval of the government's tactic could increase its popularity and lead to the erosion of suspects' Fifth Amendment rights. *See* Order, p. 22, n.15. Nonetheless, in an effort to comply with *Elstad*, the court deemed the second confession admissible, based on its finding that the second confession was not involuntary.

On June 28, 2004, the Supreme Court issued its opinion in *Missouri v. Seibert*, 124 S. Ct. 2601 (2004) (plurality opinion). In *Seibert*, the Court addressed the admissibility of a confession in a case in which the "question-first" tactic was employed. The Court defined "question-first" as the "technique of interrogating in successive, unwarned and warned phases" (and noted that the tactic is utilized with some regularity by various law enforcement agencies across the nation).

*Seibert*, 124 S. Ct. at 2608-09 & n.3. With *Seibert*, the Court set forth clear guidelines governing the admissibility of a confession elicited through use of question-first – specifically, where the suspect is subjected to custodial interrogation and provided with his *Miranda* warnings mid-stream during the interrogation and following the giving of an unwarned confession. In so doing, the Court either clarified the scope of *Elstad*'s holding (*see Seibert*, 124 S. Ct. at 2609-2612) or abrogated its holding to some extent (*see Seibert*, 124 S. Ct. at 2616-2620 (O'CONNOR, J., dissenting)). In either case, *Seibert* plainly governs the admissibility of defendant's second confession in this case.

Following the Supreme Court's issuance of the *Seibert* opinion, this court ordered the parties to attend a status hearing for the purpose of addressing its impact upon the instant case. Roughly simultaneously, defendant filed a motion for reconsideration of the March 22, 2004 Order in light of *Seibert*. Defendant contends that *Seibert* requires the suppression of his second confession. The government argues in response that the factual circumstances surrounding the interrogation and confessions in this case are more akin to those present in *Elstad* than those present in *Seibert* and that, accordingly, the second confession should not be suppressed.[3]

Defendant's motion for reconsideration is now fully briefed and ripe for decision.

II. Analysis

In *Seibert*, the Supreme Court addressed the intersection between *Miranda* and the "question-first" tactic, focusing upon their clashing objects. As the Court characterized it, "*Miranda* addressed 'interrogation practices . . . likely . . . to disable [an individual] from making

---

[3] Although defendant was given the opportunity to file a reply brief, he did not do so. Moreover, the government initially requested that a supplemental evidentiary hearing be held, and the court assented to its request and scheduled a hearing. Prior to the scheduled time for the hearing, the government informed the court that it no longer desired such a hearing, and, therefore, the hearing was cancelled.

a free and rational choice' about speaking [] and held that a suspect must be 'adequately and effectively' advised of the choice the Constitution guarantees []." *Seibert*, 124 S. Ct. at 2610 (quoting *Miranda*, 384 U.S. at 464-67). Conversely, "[t]he object of question-first is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." *Id.*, at 2610.[4]

The Court ultimately concluded that "the question-first tactic effectively threatens to thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted." *Id.*, at 2613. Accordingly, the Court determined that,

> The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires.

*Id.*, at 2610. *See also Id.*, at 2612 (characterizing threshold issue as "whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object"). To aid courts in resolving the threshold issue in cases such as this, the Court devised a list of factors for courts' consideration. They are as follows: "the completeness and detail of the questions and answers in

---

[4] The Court further explained the problems raised by question-first *vis-a-vis Miranda*'s goals as follows,

> By any objective measure, applied to circumstances exemplified here, it is likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content. After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble. *Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again.*

*Id.*, at 2710-11 (emphasis added).

the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.*, at 2612.

Critically, the Court made clear that the interrogating agents' subjective intent (*i.e.*, whether or not they acted out of an actual strategy to undermine the *Miranda* warnings) is *not* the proper focus for this inquiry. Rather, "[b]ecause the intent of the officer will rarely be as candidly admitted as it was [in *Seibert*] (even as it is likely to determine the conduct of the interrogation), the focus is on facts apart from intent that show the question-first tactic at work." *Seibert*, 124 S. Ct. at 2612, n.6. That is important in this case because there is no evidence in the record showing a subjective intent on the part of law enforcement agents to deliberately withhold defendant's *Miranda* warnings prior to his first confession.

Weighing the pertinent factors in light of the circumstances in the case before it, the Supreme Court in *Seibert* concluded that the "midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with *Miranda*'s constitutional requirement." *Id.*, at 2605. There, the same officer conducted both phases of questioning, and both phases of questioning were undertaken at the same location. The first, unwarned phase of questioning lasted 30 to 40 minutes, culminating with the defendant's confession to the crime. After a twenty-minute break, the interrogating officer administered to the defendant her *Miranda* warnings and obtained a signed waiver of her rights. He did not then do or say anything to "dispel the oddity of warning about legal rights to silence and counsel right after the police had led [the defendant] through a systematic interrogation" (*e.g.*, inform the defendant that her prior statements could not be used against her, *etc.*). *Id.*, at 2612-13. The

questioning then resumed, the defendant was confronted with her pre-warning statements, and she made a second confession. In what would seem to be an unusual move, the interrogating officer admitted that he was deliberately employing the question-first tactic. *Id.*, at 2605-06. On these facts, the Court found that "it would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to repeat at the second stage what had been said before." *Id.*, at 2613. The Court concluded that the facts did "not reasonably support a conclusion that the warnings given could have served their purpose" and, thus, deemed the defendant's post-warning statements inadmissible. *Id.*[5]

In the instant case, consideration of the *Seibert* factors yields precisely the same conclusion. The government concedes that, as in *Seibert*, the two confessions were made close in time – in fact, the confessions were relatively closer in time in the instant case. *See* Gov't Br., p. 6. Whereas the defendant in *Seibert* was given a twenty-minute break between the two confessions, the only "break" here appears to have been that attendant to one of the agents going to his car to retrieve the Advice of Rights form for defendant's signature.[6] Likewise, the entire

---

[5] The Court distinguished *Elstad* from *Seibert* on the grounds that the former involved "a good-faith *Miranda* mistake." *Seibert*, 124 S. Ct. at 2611-12. The Court examined the circumstances present in *Elstad* and found, "it was not unreasonable to see the occasion for questioning at the station house as presenting a markedly different experience from the short conversation at home; since a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission." *Id.*, at 2612.

[6] It is worth noting that, notwithstanding the comprehensive testimony presented by the government concerning the chronology and substance of the interrogation, there is no evidence that defendant was administered any kind of curative warning to the effect that nothing he had previously said could be used against him. If such evidence did exist, it would entirely fly in the face of the government's position in this litigation, which is that the agents did not believe the situation required *Miranda* warnings (prior to the time of defendant's first confession). In any event, the Court stated, "We do not hold that a formal addendum warning that a previous statement could not be used would be sufficient to change the character of the question-first procedure to the point of rendering an ensuing statement admissible, but its absence is clearly a factor that blunts the efficacy of the warnings and points

interrogation took place and both confessions were made in precisely the same setting (*i.e.*, at defendant's kitchen table while he was surrounded by government agents). As in *Seibert*, the same exact government personnel interrogated defendant leading up to his first and second confessions (with one agent taking the lead and at least one other participating in the questioning). The agents were very methodical in their means of interrogating defendant. They began by asking him pointed questions, urging him to cooperate, telling him that they did not believe him when he maintained his innocence, and finally, confronting him with evidence contradicting his claims of innocence. *See* Order, pp. 5-6, 15. They ceased – or, more accurately, interrupted – their questioning of him immediately after he had confessed to committing the bank robbery and revealed the existence of the gun and the money (*i.e.*, right after they had gotten the essential goods, so to speak), so that they could administer his *Miranda* warnings and obtain from him a signed waiver of his rights. When they then resumed the questioning, the agents clearly built upon defendant's first confession, as they went through the robbery in detail and wrote down defendant's answers to their questions regarding the same. All of these facts demonstrate that the second round of interrogation was treated as continuous with the first.

The only factual ground cited by the government in their effort to distinguish *Seibert* is that during the initial unwarned questioning in the present case (which lasted for less than 12 minutes), defendant "admitted his involvement in the bank robbery (with corroboration of some

---

to a continuing, not a new, interrogation." *Id.*, at 2612, n.7. *Cf. Id.*, at 2616 (KENNEDY, J., concurring) (criticizing the multi-factor test embraced by the plurality and suggesting alternative test, *i.e.*, that "[i]f the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made").

-8-

details and general location of the money and the gun)," but then provided a "complete and detailed statement" following the administration of his *Miranda* rights. (Gov't Br., p. 6). In light of the circumstances addressed above, that the second confession was more detailed that the first simply does not convince this Court that the agents made a "good-faith" mistake in withholding administration of defendant's *Miranda* rights until almost immediately after he had confessed to committing the bank robbery and revealed the location of the gun and the money.[7]

Based on the foregoing, this Court cannot conclude that the *Miranda* warnings provided to defendant were effective enough to accomplish their object. Rather, as in *Seibert*, the circumstances indicate that "it would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before." *See Seibert*, 124 S. Ct. at 2613. Accordingly, defendant's second confession (including his oral and written statements) is inadmissible and shall be suppressed. *See, e.g., United States v. Khan*, No. 03-CR-127-B, 2004 U.S. Dist. LEXIS 13134, at *31-32 (D. Col. July 12, 2004) (following *Seibert* and deeming post-warning statement inadmissible based upon finding that government failed to establish that the mid-interrogation *Miranda* warnings

---

[7] In its anemic six-paged brief, the government focuses chiefly upon the agents' purported subjective intent, essentially contending that they did not deliberately employ the question-first tactic in order to elicit defendant's confession and that they instead merely did not believe that *Miranda* warnings were necessary under the circumstances. *See* Gov't Br., pp. 3-4. This attempt to distinguish the present case from *Seibert* is unavailing. As a preliminary matter, in support of its argument in this vein, the government cites only its own, self-serving, bare allegations to the effect that "the initial unwarned interrogation was attributable to a good-faith belief that the interrogation was non-custodial." (Gov't Br., p. 5). *See also* Gov't Br., pp. 3-4. In any event, the agents' actual subjective intent is not the proper focus for this court's inquiry. *Seibert*, 124 S. Ct. at 2612 & n.6. Relatedly, the fact that defendant was not placed under arrest or removed from his home is irrelevant to the court's inquiry at this juncture, as the court determined months ago that defendant was subjected to a custodial interrogation. Having so determined, this court is now required by *Seibert* to assess the admissibility of the second confession through reference to the circumstances surrounding the interrogation and concomitant consideration of the relevant factors. *Id.*

"could have served their purpose" in light of circumstances surrounding same, which were similar to those present in *Seibert*). *Cf. United States v. Libby*, No. 04-26-B-W, 2004 U.S. Dist. LEXIS 14581, at *18-19 (D. Me. July 30, 2004) (declining to bar admission of second confession under *Seibert* where "the two interrogations were separated by a considerable period of time (approximately twenty hours), a change of location, and a new and different investigating officer and agency" and there was "no evidence to suggest that [the interrogating officers] had anything approaching an organized interrogation technique").[8]

## III. Conclusion

Based on the foregoing, defendant's second confession (like his first confession) shall be suppressed and may not be admitted in evidence.

Enter:

_____
David H. Coar
United States District Judge

Dated: August 25, 2004

---

[8] Interestingly, these courts characterized *Seibert*'s holding rather broadly and in an almost identical fashion. *See Libby*, 2004 U.S. Dist. LEXIS 14581, at *18 ("In *Seibert* the United States Supreme Court held that *Miranda* warnings given mid-interrogation after the defendant gave an unwarned confession, were ineffective, and thus a confession repeated after warnings were given was inadmissible at trial." *See also Khan*, 2004 U.S. Dist. LEXIS 13134, at *16-17.