# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 1099 | **DATE** | 10/27/2004 |
| **CASE TITLE** | United States of America vs. Henry C. Renken | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Suppress Evidence

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] As discussed on the attached memorandum opinion and order, Defendant's Motion to Suppress Evidence [Doc. No. 85-1] is hereby denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | OCT 27 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 101 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| mvf(lc) | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 CR 1099 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| HENRY C. RENKEN ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

DOCKETED
OCT 27 2004

Defendant Henry C. Renken was charged in a two-count indictment with bank robbery and use of a dangerous weapon in connection with the commission of said offense, in violation of 18 U.S.C. §§ 924(c)(1)(A), 2113(a) & (d). Defendant's motion to suppress evidence is currently before this court.

For the reasons set forth below, defendant's motion is denied. The evidence seized during the search of defendant's house and sports-utility vehicle on the evening of November 13, 2002 will be admissible in evidence.

## I.  FACTS[1]

On the night of November 13, 2002, government agents went to Henry C. Renken's ("Renken" or "defendant") house in Lake Bluff, Illinois. Three government agents, one in uniform and with an exposed weapon, went to the front door. Special Agent ("SA") Daniel

---

[1]The relevant facts of the bank robbery and the government's initial investigation thereof have been fully set forth in this court's March 22, 2004 memorandum opinion and order and are repeated here only to the extent necessary for coherence. This court assumes familiarity with the March 22, 2004 memorandum opinion and order.



McCune of the FBI rang the doorbell. Defendant's wife, Susan Renken ("Mrs. Renken"), who was wearing her robe, opened the door. The agents identified themselves to her and indicated that they wanted to speak to her husband and/or to her. The parties dispute whether Mrs. Renken invited the agents in (as the government contends) or the agents simply went inside (as Mrs. Renken contends). This dispute will be addressed below.

The agents entered the home and, once inside, asked Mrs. Renken who else was in the residence. She stated that defendant was upstairs in the shower and their baby was asleep in the bedroom. The agents stated that they wanted to verify who was in the house for their own safety and that they were going upstairs to do so. In particular, they were concerned about whether someone in the house might have a weapon, as the robbery suspect had used a firearm.

McCune and the other agents subsequently went upstairs. The bathroom was located at the top of the stairs, across from the exit down the stairway. McCune opened the bathroom door (which was partially closed), indicating his FBI affiliation as he did so. He then opened the shower curtain and observed defendant taking a shower. McCune told defendant that once he was done showering, McCune wanted to talk with him. As defendant finished his shower, McCune stood in the bathroom doorway with the door partially opened. The other agents first verified the baby's location and then joined McCune in waiting for defendant outside of the bathroom.

After showering, defendant dressed under McCune's watch. McCune stated that he wanted to speak to defendant, and defendant agreed. McCune and defendant walked downstairs, with at least one agent walking in front of defendant and at least one agent walking behind him. They then proceeded into the kitchen, where defendant and McCune took seats at the kitchen

table. Government agents began questioning defendant at approximately 10:50 p.m. and concluded at approximately 12:30 a.m., when the agents left defendant's home with him in custody.

Sometime between 11:02 p.m. on November 13, 2002 and 12:30 a.m. on November 14, 2002, defendant executed a consent to search form. The form stated, "I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search" and then provided a blank space, which was filled in by hand, specifying the areas to be searched. The form permitted the government agents to search "green Blazer with IL Plate 22788FF" and "412 MacLaren Ln. Lake Bluff, IL," meaning defendant's sport-utility vehicle and his home. The second typed item on the form stated, "I have been advised of my right to refuse consent"; the third stated, "I give this permission voluntarily." Defendant signed the form. SA Daniel McCune witnessed it.

## II. ANALYSIS

### A. Applicable Analysis at the Intersection of Fourth and Fifth Amendment Case Law

Confusion arises in this case because defendant frames his motion to suppress as a Fourth Amendment argument, but then cites this Court's previous decision to suppress defendant's voluntary, but unwarned, custodial statements as support for his instant motion, despite the fact that the previous decision was grounded in Fifth Amendment law. See Def.'s Br.; cf. Mem. Order & Op., Aug. 26, 2004.

Fourth Amendment analysis turns on the reasonableness of a state-initiated search and seizure. The primary factor used in determining reasonableness is the existence of a valid warrant. In the absence of a warrant, courts must examine the challenged search to see if it falls

within a recognized warrantless search exception. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In its opposition to defendant's suppression motion, the government argues that the search in question was conducted by consent of the defendant and, moreover, that the government agents entered the house with the consent of the defendant's wife. This court must examine the consent argument by determining whether the consent, in light of the totality of the circumstances, was given freely and voluntarily. Id. at 221.

The Fifth Amendment analysis used in this court's previous decision to suppress defendant's voluntary but unwarned custodial statements also turns on the issue of voluntariness. Missouri v. Seibert, 124 S. Ct. 2601 (2004). When government agents interrogate a suspect without first informing the suspect of his or her Miranda rights, the court must determine whether the suspect's will was overborne by the interrogation such subsequent statements were involuntary. Id.; United States v. Hocking, 860 F.2d 769, 774 (7th Cir. 1988).

Defendant's briefs in this suppression motion raise an implied argument that this court should apply the fruit of the poisonous tree doctrine first developed in Wong Sun v. United States, 371 U.S. 471 (1963), to both Fourth Amendment and Fifth Amendment failure-to-warn situations. Although there is an appealing consistency in such an extension, the Supreme Court has declined to take this step. See, e.g., Seibert, 124 S. Ct. 2601; United States v. Patane, 124 S. Ct. 2620 (2004). Instead, despite the overlapping fact patterns that may give rise to both Fourth and Fifth Amendment evidentiary questions, courts often must tread a tight and constrained path through the case law at the nexus of the two.

Defendant frames this suppression motion as a Fourth Amendment issue, and this court will follow that direction. As noted above, the analysis under both the Fourth and Fifth

within a recognized warrantless search exception. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In its opposition to defendant's suppression motion, the government argues that the search in question was conducted by consent of the defendant and, moreover, that the government agents entered the house with the consent of the defendant's wife. This court must examine the consent argument by determining whether the consent, in light of the totality of the circumstances, was given freely and voluntarily. Id. at 221.

The Fifth Amendment analysis used in this court's previous decision to suppress defendant's voluntary but unwarned custodial statements also turns on the issue of voluntariness. Missouri v. Seibert, 124 S. Ct. 2601 (2004). When government agents interrogate a suspect without first informing the suspect of his or her Miranda rights, the court must determine whether the suspect's will was overborne by the interrogation such subsequent statements were involuntary. Id.; United States v. Hocking, 860 F.2d 769, 774 (7th Cir. 1988).

Defendant's briefs in this suppression motion raise an implied argument that this court should apply the fruit of the poisonous tree doctrine first developed in Wong Sun v. United States, 371 U.S. 471 (1963), to both Fourth Amendment and Fifth Amendment failure-to-warn situations. Although there is an appealing consistency in such an extension, the Supreme Court has declined to take this step. See, e.g., Seibert, 124 S. Ct. 2601; United States v. Patane, 124 S. Ct. 2620 (2004). Instead, despite the overlapping fact patterns that may give rise to both Fourth and Fifth Amendment evidentiary questions, courts often must tread a tight and constrained path through the case law at the nexus of the two.

Defendant frames this suppression motion as a Fourth Amendment issue, and this court will follow that direction. As noted above, the analysis under both the Fourth and Fifth

Amendments in this specific situation turn on voluntariness and the result under either framework would be the same.

### B. A Warrantless Search Must Fall Within A Warrantless Search Exception Under the Fourth Amendment

Defendant correctly notes that the Fourth Amendment requires a state-initiated search be reasonable and that such reasonableness is generally determined by the existence of a valid warrant. The touchstone of the Fourth Amendment is "reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citing Katz v. United States, 389 U.S. 347, 360 (1967)). The Fourth Amendment, however, does not prohibit all state-initiated searches but rather proscribes those which are "unreasonable." Jimeno, 500 U.S. at 250. To determine whether a search was reasonable, as a threshold matter, a court must consider whether there was a valid warrant issued therefor, and if not, whether the search falls into one of the recognized exceptions to the search warrant requirement.

The defendant argues that a warrantless search that does not fall into one of the warrantless search exceptions must be invalid. The government asserts that the search in question was protected under the consent search exception. We turn now to examine the question of consent in the search.

#### 1. The Initial Entry and Seizure of the House Was By Consent

The government asserts that its agents entered defendant's house with the consent of defendant's wife and immediately moved to secure the premises. Defendant argues that defendant's wife did not consent to the agents' entry, but rather that "[a]t best, Ms. Renken, a good citizen, opened the door because the FBI/police knocked on it. Once the door was open, the

[government agents] took control over the house as if executing a search or arrest warrant." Def.'s Reply Br. at 1. SA McCune and Mrs. Renken give conflicting accounts of what happened at the doorway of the house that night. SA McCune stated that the government agents asked if they could speak with Mrs. Renken and that she agreed and invited them into the house. The government notes that the defendant does not allege Mrs. Renken objected to the government agents' entry nor that the agents threatened her, physically or verbally, or claimed to have independent authority to enter the house.

The burden of proving voluntariness of consent, however, remains on the government. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). Voluntariness is a question of fact,to be determined by examining the totality of the circumstances.[2] Schneckloth, 412 U.S. at 227. "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." Id. at 230. However, "unlike those constitutional guarantees that protect a defendant at trial, it cannot be said that every reasonable presumption ought to be indulged against voluntary relinquishment." Id. at 243. The Seventh Circuit has outlined factors for a trial court to consider in evaluating voluntariness of consent, including "age, education and intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody."

---

[2] "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id. at 248-49.

United States v. LaGrone, 43 F.3d 332, 334 (7th Cir. 1994) (quoting United States v. Kozinski, 16 F.3d 795, 810 (7th Cir. 1994)).

In Schneckloth, the defendant was a passenger in a car that was stopped by the police for a routine traffic violation at approximately three a.m. The police asked the driver if they could search the car. The driver replied, "Sure, go ahead." The driver assisted in the search by opening the trunk and the glove compartment for the officers. Under the rear seat of the car, the police found three stolen checks, which were then used as evidence in the defendant's trial for possessing a check with intent to defraud. Schneckloth, 412 U.S. at 219-21. Defendant was convicted and appealed. The appellate court found that the trial court could find that consent was given freely and voluntarily to the search, noting that the driver consented to and assisted in the search and that the atmosphere of the interaction was "congenial." Id. at 221.

In the instant case, the circumstances surrounding the officers' entry into the Renken house are less clear-cut. Both sides agree that three government agents rang the doorbell of the defendant's house and that Mrs. Renken answered the door. The government claims that the agents identified themselves and asked to speak with Mrs. Renken. Gov't's Corrected Resp. Br. at 7. The defendant alleges that the agents "did not present Ms. Renken with a consent to search [form] at the time of their entry" but rather executed "a highly organized police invasion." Def.'s Reply Br. at 2. However, a consent to search form is not a requirement for free and voluntary consent.

Here, because defendant's wife was not a minor, does not allege any educational or mental deficiencies, and does not allege that the government agents claimed independent authority to enter, the Court finds that there was consent to enter the house. The record does not

contain any allegation or evidence that Mrs. Renken verbally or physically sought to deny entry to the agents; in fact, it appears that she gave some kind of implied consent to entry, even if there was no verbal assent to their request to speak to her husband. This Court notes, however, that this kind of implied consent should not be assumed in every case. The effect of opening one's front door to find three law enforcement officials, one in uniform and with an exposed weapon, on the front step at 10:40 p.m., and several more armed agents arrayed around the perimeter of one's property, likely would have an intimidating effect on many people; an instinctive recoil should not be taken for a consent to enter without more persuasive evidence from the government. Indeed, if voluntariness were the only issue to examine in this suppression motion, instead of consent, it would be hard to justify how this encounter was voluntary. From the moment Mrs. Renken opened the door of the house until the agents left with her husband, the setting strongly suggests coercion and intimidation. However, the support provided for both parties' positions on this point was conclusory and rhetorically weak.

### C. Under Fifth Amendment Case Law, A Miranda Violation Does Not Require Suppression of Non-Testimonial Evidence

Defendant asserts that the evidence seized during the search of his house and sport-utility vehicle on the night of November 13, 2002 must be suppressed because "the same circumstances that caused the defendant's illegal confessions to be suppressed make the consents [*sic*] to search ... illegal." (Def.'s Br. at 6.) This court's decision to suppress defendant's statements rests on Missouri v. Seibert, 124 S. Ct. 2601 (2004), which held that the question-first interrogation technique, in which Miranda warnings were given mid-interrogation, were ineffective and post-warning confessions therefore inadmissible at trial. Another recent Supreme Court decision,

-8-

rendered the same day as Seibert, contradicts defendant's assertion, however, clearly stating that a failure to give Miranda warnings does not require "suppression of the physical fruits of the suspect's unwarned but voluntary statements." United States v. Patane, 124 S.Ct. 2620, 2624 (2004).

In Patane, defendant was arrested for harassing his ex-girlfriend and subsequently released subject to a temporary restraining order. Defendant apparently violated the restraining order and local police began an investigation. After learning from an agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") that defendant, a convicted felon, possessed a firearm, local police and ATF agents went to defendant's home and arrested defendant for violating the restraining order. The police officer began to advise defendant of his Miranda rights, but did not get beyond the right to remain silent before defendant interrupted and asserted that he knew his rights. The officers then questioned defendant about the firearm, asked for and received permission to retrieve it, and seized the gun. The trial court granted defendant's motion to suppress the firearm on the grounds that officers lacked probable cause to arrest defendant for violating the restraining order. The Court of Appeals affirmed the suppression order, but rejected the probable cause reasoning. Instead, it based its opinion on its reading of Dickerson v. United States, 530 U.S. 428 (2000), as announcing that "a failure to warn pursuant to Miranda is itself a violation of the Constitution." Patane, 124 S.Ct. at 2625. The Supreme Court, in its plurality decision overruling the appellate court, stated that "the Miranda rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary

statement. Accordingly, there is no justification for extending the Miranda rule to this context." Id. at 2626.

The Patane plurality focused on the self-executing nature of the Self-Incrimination Clause and the need to maintain the "closest possible fit ... between the Self-Incrimination Clause and any rule designed to protect it." Id. at 2628. The plurality explained "Unlike the Fourth Amendment's bar on unreasonable searches, the Self-Incrimination Clause is self-executing. We have repeatedly explained 'that those subjected to coercive police interrogations have an *automatic* protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial.'" Id. (quoting Chavez v. Martinez, 538 U.S. 760, 769 (2003) (plurality opinion)). The plurality went on to state that "[t]his explicit textual protection supports a strong presumption against expanding the Miranda rule any further." Id. at 2628. Thus, it reasoned, "[i]ntroduction of the nontestimonial fruit of a voluntary statement ... does not implicate the Self-Incrimination Clause." Id. In their concurring opinion, Justices Kennedy and O'Connor stated that "[a]dmission of nontestimonial physical fruits ... does not run the risk of admitting into trial an accused's coerced incriminating statements against himself."

Insofar as consent to search is not an incriminating statement, and as long as it is not being admitted for itself, then there is no constitutional violation in admitting evidence seized pursuant to an unwarned confession. If consent is perceived or interpreted as an inculpatory statement, then it will be inadmissible under the self-executing Self-Incrimination Clause. Here, however, the government seeks only indirectly to use defendant's consent to justify its search. However, great care must be taken to prevent granting an evidentiary benefit to careless or bad faith investigative techniques. This Court sees a tremendous risk of creating an incentive for law

enforcement officials to forego Miranda warnings, in the hopes that the admissibility of evidence seized pursuant to the custodial interrogation will overcome the defects of any unwarned statements. Such a result would conflict with fundamental requirements of due process. In the case at bar, however, this Court does not need to conduct such a searching evaluation because this is a Fourth Amendment, not a Fifth Amendment, dispute.

Under Patane, therefore, defendant's argument that physical evidence seized pursuant to his unwarned statements should be suppressed fails. Defendant argues that Patane is inapplicable because it applies only to Fifth Amendment violations, whereas the issue in the instant case is whether the government violated defendant's Fourth Amendment rights. (Def.'s Reply Br. at 3) However, defendant's arguments contradict one another; first, defendant argues that "the same circumstances that caused defendant's illegal confessions to be suppressed make the consents [*sic*] to search the defendant's house in this case illegal," and then that the Fifth Amendment is not at issue. But the Fifth Amendment, specifically the failure to warn and the "question-first" interrogation technique used by the government agents in their interrogation of defendant, is what "caused" defendant's statements to be suppressed. Mem. Op. and Order, Aug. 26, 2004. In fact, this suppression motion appears to implicate the nexus of Fourth and Fifth Amendment law. As discussed above, however, the decision to deny the motion to suppress is the same under either analysis.

## Conclusion

For the foregoing reasons, Defendant's Motion to Suppress Evidence is denied.

Enter:

David H. Coar
United States District Judge

Dated: **October 27, 2004**